

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1034 | **DATE** | 1/4/2002 |
| **CASE TITLE** | Horkey vs. J.V.D.B. & Associates Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/7/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment. Plaintiff's motion for summary judgment is granted as to counts II, III and part of count I and denied as to part of count I of the complaint.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JAN 8 2002 date docketed | |
| | Notified counsel by telephone. | | 19 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 1/4/2002 date mailed notice | |
| SM | courtroom deputy's initials | SM mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |


| | |
|---|---|
| AMANDA HORKEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 01 C 1034 |
| J.V.D.B. & ASSOCIATES, INC., an Illinois corporation, | ) Magistrate Judge Ian H. Levin |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Amanda Horkey's ("Plaintiff") motion for summary judgment in the cause. For the reasons set forth below, Plaintiff's motion for summary judgment is granted as to Counts II and III and part of Count I and denied as to part of Count I of the Complaint.

## BACKGROUND FACTS

Defendant J.V.D.B. & Associates, Inc. ("Defendant") is a debt collector as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a.[1] (LR 56.1(a) St. ¶ 4.) Plaintiff is an individual from whom Defendant sought to collect a consumer debt owed for dental services. (LR 56.1(a) ¶ 3.)

On January 9, 2001, while Plaintiff was working at A&R Transport (located in San Bernardino, California) there were at least two telephone calls within about twenty minutes of each other from Defendant's employee, Mr. Chris Romero. (LR 56.1(a) St. ¶ 5.) Mr. Romero was

---

[1] Defendant is a debt collector pursuant to Section 1692a because it regularly uses an instrumentality of interstate commerce; namely, telephone lines, to collect or attempt to collect consumer debts. 15 U.S.C. § 1692a.

contacting Plaintiff to collect on a $817.00 consumer debt that she owed to Dr. Marcus M. Que for dental services. (LR 56.1(a) St. ¶ 5.) During the first telephone conversation, Mr. Romero demanded payment from Plaintiff "in full" and "now" for the overdue bill owed to Mr. Que. (LR 56.1(a) St. ¶ 6.) Plaintiff told Mr. Romero that she could not pay the bill in full at that time. (LR 56.1(a) St. ¶ 7.) Mr. Romero informed Plaintiff that she could make two payments. (LR 56.1(a) St. ¶ 7.)

During the first telephone conversation, Plaintiff also told Mr. Romero that she could not speak with him at that time because she was at work. (LR 56.1(a) St. ¶ 7.) Plaintiff asked Mr. Romero for his telephone number so that she could call him back from her home to set up a payment schedule. (LR 56.1(a) St. ¶ 7.) Mr. Romero then began acting rudely and asked Plaintiff for additional personal information. (LR 56.1(a) St. ¶ 8.) Because Mr. Romero refused to listen to Plaintiff regarding the fact that she was not able to discuss the overdue payment matter while at work, she hung up on him. (LR 56.1(a) St. ¶ 8.) Immediately after hanging up on Mr. Romero, Plaintiff left her office for approximately fifteen minutes. (LR 56.1(a) ¶ 9.)

Mr. Romero, subsequently, called again and spoke with Mr. Jimmie Scholes, one of Plaintiff's co-workers. (LR 56.1(a) St. ¶¶ 10, 11.) Mr. Romero asked to speak with Plaintiff, at which time, Mr. Scholes informed Mr. Romero that Plaintiff had stepped away from her office for a few minutes and asked Mr. Romero if he could take a message for Plaintiff. (LR 56.1(a) St. ¶ 11.) Mr. Romero told Mr. Scholes to "tell Amanda to quit being such a fucking bitch" and hung up on him. (LR 56.1(a) St. ¶ 12.) Shortly, after Mr. Scholes informed Plaintiff of Mr. Romero's message, she received another telephone call in which the caller hung up when Plaintiff answered. (LR 56.1(a) St. ¶ 13.) Plaintiff believes that this third telephone call that she received within a twenty minute time span was also from Mr. Romero. (LR 56.1(a) St. ¶ 13.)

2

Plaintiff never received a written notice from Defendant informing her of her right to receive validation and verification of the debt owed to Mr. Que, as required by Section 1692a of the FDCPA. 15 U.S.C. § 1692a. (LR 56.1(a) St. ¶ 14.) Moreover, on June 28, 2001, Defendant's counsel herein, Paul D. Lawent, produced a copy of a December 21, 2000 initial form debt collection letter on his own attorney letterhead (which had been sent to Plaintiff), seeking to collect on the $817.00 debt owed to Mr. Que. (LR 56.1(a) St. ¶ 15.) This letter, which is the only debt collection letter that was sent to Plaintiff, contains no reference to Defendant. (LR 56.1(a) St. ¶ 15.)

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue

3

of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

### I. COUNT III

Plaintiff argues that Defendant failed to provide Plaintiff with a statutorily-required validation notice, in violation of Section 1692g of the FDCPA, in that the notice was sent on Defendant's attorney's letterhead and in no way referenced Defendant. 15 U.S.C. § 1692g. Pl.'s Mem. at 5. Defendant, on the other hand, asserts that Defendant's attorney's letter (of December 21, 2000) was a debt validation notice and, anyway, that any failure by it to provide Plaintiff with the validation notice did not violate Section 1692g of the FDCPA because Defendant did not have Plaintiff's home or work addresses in California. Def.'s Mem. at 2-3. Thus, Defendant argues that, "sending another validation notice would have been a waste of time." *Id.* at 2.

Section 1692g(a) of the FDCPA requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, . . . send the consumer a written notice containing – . . . (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Moreover, according to Section 809 of the Federal Trade Commission's ("FTC") Official Commentary on the

4

Fair Debt Collection Practices Act, "[a] debt collector's agent may give the notice, as long as it is clear that the information is being provided on behalf of the debt collector." FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097-50110 (Dec. 13, 1988).

The Court agrees with Plaintiff and finds that Defendant failed to provide Plaintiff with the statutorily-required validation notice. Rather, Plaintiff was sent a notice by Defendant's attorney dated December 21, 2000 on the attorney's letterhead, which in no way referenced Defendant and in no way sought to indicate that Defendant's attorney had a business relationship with Defendant or was acting as Defendant's agent when attempting to collect the debt owed by Plaintiff.[2]

In any event, as seen, a debtor has 30 days after receipt of the debt notice to challenge the validity of the debt. Even assuming *arguendo* that the December 21, 2000 notice sent from Defendant's attorney can be construed as a validation notice pursuant to Section 1692g, Defendant's demand on January 9, 2001, that Plaintiff pay the bill in full "now" violated the 30-day validation period and therefore, would have overridden and rendered wholly ineffectual any validation notice. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). *See also Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (demand for payment "within thirty days" violates Section 1692g of the FDCPA); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) (demand for partial payment or suitable arrangements for payment within one week overshadowed the 30-day validation notice); *Jenkins v. Union Corp.*, 999 F.Supp.1120, 1131-1132 (N.D. Ill. 1998) (demand that the debtor immediately

---

[2]Moreover, there is no allegation or proof by Defendant that its attorney is a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). Under the FDCPA, "lawyers can be debt collectors as long as they engage in the business of debt collection." *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994); *Frey v. Satter, Beyer & Spires, et al.*, 1999 WL 301650, * 2 (N.D. Ill. May 3, 1999) ("debt collectors, under the FDCPA, include[] attorneys whose principal business is debt collection or who regularly collect debts of another.") *See generally, Boyd v. Wexler*, No. 01-1809, 2001 WL 1658845 (7th Cir. Dec. 28, 2001).

make payment to, or arrangements with, the creditor, was held to violate Section 1692g of the FDCPA); *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484-85 (4th Cir. 1991) (debt collector's letter demanding that Plaintiff respond "immediately," "now," and "today" undercut and overshadowed the 30-day period validation period).[3]

The Court also finds Defendant's assertion that it is excused (as "a waste of time") from sending Plaintiff a validation notice because it did not have Plaintiff's home or work addresses in California to be unavailing. While Plaintiff worked in California, she still owned her home in Plainfield, Illinois and any mail sent to Plaintiff at her last known address in Plainfield was forwarded to her in California by her Plainfield, Illinois tenant (since returning to Illinois, Plaintiff continues to live there). Pl.'s Reply at 6. In addition, if Plaintiff had not continued to own her home in Plainfield, Defendant could have obtained a forwarding address from the post office. In any event, when Defendant initially contacted Plaintiff by telephone on January 9, 2001, it received notification that same day that Plaintiff was represented by counsel, whose name and address were provided to Defendant at that time. Def's Mem., Ex. B at 3. Thus, in order to comply with the requirements of Section 1692g, Defendant could easily have sent the statutorily-required validation notice to Plaintiff in care of her counsel. Defendant, however, as seen, did nothing to comply with its written notice obligations under the FDCPA.

Therefore, the Court finds that Plaintiff is entitled to summary judgment as to Count III.

## II.   COUNT I

Plaintiff argues that Defendant violated Section 1692c(a)(3) of the FDCPA when Defendant's

---

[3]The Court notes, too, that Defendant failed to contest or in any way dispute, that Mr. Romero's collection demand for payment "now" overshadowed, and thus rendered ineffectual any validation notice that had been sent.

6

employee, Mr. Romero, contacted her at her place of employment regarding the debt she owed Dr. Que for dental services. 15 U.S.C. § 1692c(a)(3); Pl.'s Mem. at 6.

Plaintiff states that when Mr. Romeo contacted her on January 9, 2001 by telephone, she informed him that she could not talk to him while at work; however, he continued to ask her questions and made at least one additional phone call to her while at work. *Id.* Defendant, on the other hand, contends that it did not violate Section 1692c(a)(3) in that Plaintiff did not tell Mr. Romero that her employer has a policy against such communication at work. Def.'s Mem. at 3. Moreover, Defendant argues that Plaintiff never communicated this prohibition in writing to Defendant. *Id.* Therefore, Defendant asserts that there is no allegation that Plaintiff ever told Defendant that her employer had a policy that she could not be contacted at her place of employment. *Id.*

Section 1692c(a)(3) of the FDCPA provides that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–
... (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(3). Such action on the part of a debt collector constitutes a direct violation of the FDCPA. *United States v. Central Adjustment Bureau, Inc.,* 667 F.Supp. 370, 375, 388, 389, 391, and 393 (N.D. Tex. 1986), *aff'd as modified United States v. Central Adjustment Bureau, Inc.,* 823 F.2d 880 (5th Cir. 1987) (making calls to debtor's place of employment after being told not to do so by the debtor or employer is a violation of the FDCPA.) *See also U.S. v. ACB Sales & Service, Inc.,* 590 F.Supp. 561, 565 (D.Ariz.1984).

7

The Court agrees with Plaintiff and finds that Defendant violated Section 1692c(a)(3) when Defendant's employee, Mr. Romero, contacted Plaintiff at her place of employment after she informed Mr. Romero that she could not talk to him, then, regarding the debt she owed to Dr. Que for dental services because she was at work. For instance, it is undisputed that Mr. Romero contacted Plaintiff at work; that Plaintiff told Mr. Romero that she could not talk to him while at work; that Plaintiff asked Mr. Romero for his phone number so that she could call him from home regarding the debt; that Mr. Romero continued to ask Plaintiff for personal information; that Plaintiff hung up on Mr. Romero; and that Mr. Romero placed at least one additional telephone call to Plaintiff's place of employment after she stated that she could not talk to him at work. (LR 56.1(a) St. ¶¶ 7-13; Def.'s Resp. to Pl.'s LR 56.1(a) St. ¶¶ 3-6.)

Moreover, respectfully, Defendant provides absolutely no support for its position that a debtor must provide written notice that the employer has a policy prohibiting such communications. There is no requirement in Section 1692c(a)(3) that a consumer provide a written notice to the debt collector that the consumer's employer has a policy of prohibiting such communications at work. *See Central Adjustment Bureau*, 667 F.Supp. at 375. Rather, all that is required is that the debtor inform the debt collector that the debt collector cannot make telephone calls to the debtor's place of employment regarding any alleged debt owed.

### COUNT I (Part 2)

Plaintiff also alleges, in Count I, a violation under Section 1692c(b) of the FDCPA, in that, Mr. Romero spoke with Mr. Scholes (one of Plaintiff's coworkers) on the telephone. Pl.'s Mem. at 7. In particular, Plaintiff asserts that when Mr. Scholes answered Plaintiff's telephone, Mr. Scholes informed Mr. Romero that Plaintiff was not available at which point Mr. Romero told Mr. Scholes

8

to "[t]ell Amanda to quit being such a fucking bitch" and then hung up. (LR 56.1(a) St. ¶ 12.) Defendant, on the other hand, argues that while Mr. Romero spoke with Mr. Scholes when he answered Plaintiff's telephone, Mr. Romero did not discuss Plaintiff's debt with Mr. Scholes (despite the profane language). Def.'s Mem. at 4. Thus, Defendant contends that simply asking Plaintiff's co-worker who answered Plaintiff's telephone if she is available does not constitute a violation of Section 1692c(b) of the FDCPA because Plaintiff's debt was not discussed. *Id.*

Section 1692c(b) of the FDCPA provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c(b). A debt collector who contacts third parties regarding a consumer's debt without the consent of the consumer violates the FDCPA. *Central Adjustment Bureau*, 667 F.Supp at 375, 388, 391, 393, and 396. *See also Austin v. Great Lakes Collection Bureau, Inc.*, 834 F.Supp. 557, 559 (D.Conn.1993) (calling consumer's office and speaking with consumer's secretary was found to be a violation of the FDCPA).

The Court agrees with Defendant and finds that there is no evidence that Mr. Romero in communicating with Plaintiff's co-worker, Mr. Scholes discussed Plaintiff's debt. Rather, Mr. Romero's conversation with Mr. Scholes was merely limited to inquiring as to Plaintiff's whereabouts and entailed the use of inappropriate, profane language. Accordingly, the Court denies Plaintiff's motion for summary judgment as it relates to Plaintiff's allegation that Defendant violated Section 1692c(b).[4]

### III. COUNT II

---

[4]The cases cited by Plaintiff, *Central Adjustment Bureau, supra,* and *Austin, supra,* are distinguishable. Unlike here, the debt collector's communications with third parties in those cases expressly referred in some way to the consumer's debt.

9

Plaintiff argues that Mr. Romero's use of profane language in telling Mr. Scholes to "tell Amanda to quit being such a fucking bitch" violates Section 1692d(2) of the FDCPA. Pl.'s Mem. at 8. Defendant, however, asserts that Mr. Romero's use of such language does not violate Section 1692d(2) because he did not speak directly to Plaintiff; rather, Mr. Romero spoke to Plaintiff's co-worker, Mr. Scholes, who is a third party. Def.'s Mem. at 5.

Section 1692d of the FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Moreover, Section 1692d(2) provides that "[t]he use of obscene or profane language the natural consequence of which is to abuse the hearer or reader" is a violation of this section. 15 U.S.C. § 1692d(2). Moreover, as illustrated by case law, the use of profane language in the collection of a debt clearly and unequivocally violates Section 1692d(2). *Central Adjustment Bureau*, 667 F.Supp. at 376, 388, 390-394 (calling a debtor a "god damn liar," "low-lying bitch," "low-down son of a bitch," and telling debtors to "pay [the] damn bill," that the debt collector "didn't give a shit about [the consumer's] bills," and that the judge who hears consumer cases "didn't give a fuck about [a consumer's] situation were found to violate the FDCPA).

The Court agrees with Plaintiff and finds that Defendant's use of profane language violates Section 1692d(2) of the FDCPA. Defendant's employee, Mr. Romero, called and talked to Plaintiff about the subject debt. Then, about fifteen minutes later, Mr. Romero violated Section 1692d(2) of the FDCPA when he left the described profane message about Plaintiff with her co-worker, Mr. Scholes. Mr. Romero's obvious intent, and the reasonable assumption, was that Mr. Scholes would relay Mr. Romero's profane message to Plaintiff, which Mr. Scholes immediately did when Plaintiff

returned to her desk some fifteen minutes later. The profane message to Plaintiff from Mr. Romero, clearly, was directly tied to Mr. Romero's debt collection phone call to Plaintiff fifteen minutes before. Therefore, the Court finds that Mr. Romero's use of profane and obscene language in connection with the collection of the debt had the natural consequence of harassing, oppressing or abusing Plaintiff, in violation of Section 1692d(2).

Accordingly, the Court finds that Plaintiff is entitled to summary judgment as to Count II.

## CONCLUSION[5]

Based on the foregoing, Plaintiff's motion for summary judgment on the issue of liability is granted as to Counts II, III, and Part of Count I and denied as to Part of Count I.

**ENTER:**

**IAN H. LEVIN**
**United States Magistrate Judge**

Dated: January 4, 2002

---

[5]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's argument that Defendant failed to comply with Local Rule 56.1(b).

11